**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

AMA SYSTEMS, LLC, et al.,

     Plaintiffs,

  v.

UNITED STATES FOOD AND DRUG
ADMINISTRATION, et al.,

     Defendants.

Case No. 8:23-cv-00489-DLB

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      BACKGROUND ...................................................................................................... 1

      A.     Regulatory Framework ............................................................................... 1

      B.     FDA's Policy Regarding Disclosure of Files for
Unauthorized EUA Requests ...................................................................... 2

      C.     Plaintiffs' FOIA Request/Undisputed Facts ............................................. 4

II.     LEGAL STANDARDS ........................................................................................... 5

      A.     Summary Judgment in FOIA Actions ........................................................ 5

      B.     Discovery in FOIA Actions ....................................................................... 7

III.    ARGUMENT ......................................................................................................... 8

      A.     The Information Contained in Shenzhen Centurion's EUA Request File is
Exempt from Disclosure Under FOIA Exemption 4 ................................. 8

      B.     FDA Properly Determined that No Portion of the EUA Request File is
Reasonably Segregable .............................................................................. 12

      C.     FDA's Withholding is Proper Under the FOIA Improvement Act ...................... 15

IV.     CONCLUSION ..................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Acumenics Research & Tech. v. U.S. Dep't of Justice,*
   843 F.2d 800 (4th Cir. 1988) ...................................................................... 15

*Am. Mgmt. Servs., LLC v. Dep't of the Army,*
   703 F.3d 724 (4th Cir. 2013) ........................................................................ 6

*Am. Small Bus. League v. U.S. Dep't of Def.,*
   411 F. Supp. 3d 824 (C.D. Cal. 2019) .......................................................... 16

*Bowen v. U.S. Food & Drug Admin.,*
   925 F.2d 1225 (9th Cir. 1991) ...................................................................... 14

*Campaign Legal Ctr. v. U.S. Dep't of Justice,*
   34 F.4th 14 (D.C. Cir. 2022).......................................................................... 7

*Church of Scientology v. Internal Revenue Serv.,*
   792 F.2d 146 (D.C. Cir. 1986).............................................................. 14, 15

*Citizens Comm'n on Human Rights v. Food & Drug Admin.,*
   No. 92CV5313, 1993 WL 1610471 (C.D. Cal. May 10, 1993)...................... 13

*Fed. Trade Comm'n v. Grolier Inc.,*
   462 U.S. 19 (1983)........................................................................................ 13

*Food Marketing Institute v. Argus Leader Media,*
   139 S. Ct. 2356 (2019)...................................................................... 9, 11, 16

*Freeman v. U.S. Dep't of Justice,*
   808 F.2d 834, 1986 WL 18310 (4th Cir. 1986) (unpublished table decision).................. 6

*Goldner v. Social Sec. Admin.,*
   293 F. Supp. 3d 540 (D. Md. 2017)................................................................ 7

*Heeney v. Food & Drug Admin.,*
   No. CV 97-5461 MMM CTX, 1999 WL 35136489 (C.D. Cal. Mar. 16, 1999) ............. 10

*Henson v. Dep't of Health & Human Servs.,*
   No. 14-cv-908-DRH-DGW, 2017 WL 1090815 (S.D. Ill. Mar. 23, 2017) ...................... 10

*Hunton & Williams v. U.S. Dep't of Justice,*
    590 F.3d 272 (4th Cir. 2010) .................................................. 6

*Larson v. Dep't of State,*
    565 F.3d 857 (D.C. Cir. 2009) ............................................ 6, 7

*Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.,*
    903 F. Supp. 2d 59 (D.D.C. 2012) ........................................ 10

*Public Citizen v. Mineta,*
    427 F. Supp. 2d 7 (D.D.C. 2006) ......................................... 14

*Rein v. U.S. Patent & Trademark Office,*
    553 F.3d 353 (4th Cir. 2009) ............................................. 13

*Rosenberg v. U.S. Dep't of Def.,*
    342 F. Supp. 3d 62 (D.D.C. 2021) ....................................... 15

*SafeCard Servs., Inc. v. Secs. & Exchange Comm'n,*
    926 F.2d 1197 (D.C. Cir. 1991) ........................................... 6

*Schrecker v. U.S. Dep't of Justice,*
    217 F. Supp. 2d 29 (D.D.C. 2002) ........................................ 7

*Seife v. Food & Drug Admin.,*
    492 F. Supp. 3d 269 (S.D.N.Y. 2020), *aff'd*, 43 F.4th 231 (2d Cir. 2022) ............... 11, 12

*Solers, Inc. v. Internal Revenue Serv.,*
    827 F.3d 323 (4th Cir. 2016) ............................................. 7

*U.S. Dep't of Justice v. Landano,*
    508 U.S. 165 (1993) .................................................... 11

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press,*
    489 U.S. 749 (1989) .................................................... 13

*ViroPharma Inc. v. Dep't of Health & Human Servs.,*
    839 F. Supp. 2d 184 (D.D.C. 2012) ...................................... 10

*Webb v. Dep't of Health & Human Servs.,*
    696 F.2d 101 (D.C. Cir. 1982) ........................................ 11, 13

*Wickwire Gavin, P.C. v. Def. Intelligence Agency,*
    330 F. Supp. 3d 592 (E.D. Va. 2004) ..................................... 8

*Wickwire Gavin, P.C. v. U.S. Postal Serv.*,
    356 F.3d 588 (4th Cir. 2004) ........................................................................ 6

**STATUTES**

5 U.S.C. § 552(a)(8) ...................................................................................... 15

5 U.S.C. § 552(b). .................................................................................... 12, 13

5 U.S.C. § 552(b)(4) ...................................................................................... 1, 8

18 U.S.C. § 1905 ......................................................................................... 1, 15

21 U.S.C. § 360bbb-3(a)(1) .............................................................................. 1

**REGULATIONS**

21 C.F.R. § 20.61 ............................................................................. 1, 3, 8, 16

21 C.F.R. § 20.81 .............................................................................................. 16

21 C.F.R. § 312.130 ............................................................................................ 3

21 C.F.R. § 314.430 ............................................................................................ 3

21 C.F.R. § 601.50 .............................................................................................. 3

21 C.F.R. § 601.51 .............................................................................................. 3

21 C.F.R § 807.95 ......................................................................................... 2, 11

21 C.F.R. § 812.38 ........................................................................................ 3, 11

21 C.F.R. § 814.9 .......................................................................................... 3, 11

21 C.F.R. § 1114.47 ........................................................................................... 3

Emergency Use Authorization Declaration, 95 Fed. Reg. 18250 (Apr. 1, 2020) ........................... 2

**RULES**

Fed. R. Civ. P. 56(a) ......................................................................................... 1

AMA Systems, LLC and Bluemar Promotions, LLC (collectively, "Plaintiffs") brought this Freedom of Information Act (FOIA) action against the U.S. Food and Drug Administration (FDA) and Robert M. Califf, M.D., in his official capacity as Commissioner of Food and Drugs (collectively, "Defendants"), seeking Emergency Use Authorization (EUA) requests submitted to FDA by five named entities, as well as correspondence between those entities and FDA regarding the requests. Plaintiffs challenge FDA's withholding of its file for an EUA request submitted by one of the named entities, Shenzhen Centurion Technology Co. LTD. ("Shenzhen Centurion"), which includes the EUA request and correspondence regarding the request. As supported by this memorandum and accompanying declarations,[1] FDA properly withheld the information contained in the Shenzhen Centurion EUA request file under FOIA Exemption 4, 5 U.S.C. § 552(b)(4); the Federal Trade Secrets Act, 18 U.S.C. § 1905; and FDA's implementing regulations at 21 C.F.R. § 20.61(a)–(c). The Court should therefore grant summary judgment in favor of Defendants.

I.      **BACKGROUND**

   A.      **Regulatory Framework**

Section 564 of the Federal Food, Drug, and Cosmetic Act (the "Act") provides that under certain emergency circumstances, the Secretary of Health and Human Services (the "Secretary") may issue an "emergency use authorization" (EUA) "authoriz[ing] the introduction into interstate commerce . . . of a drug, device, or biological product intended for use in an actual or potential emergency . . . ." 21 U.S.C. § 360bbb-3(a)(1). On February 4, 2020, the Commissioner

---

[1] Defendants' motion for summary judgment is accompanied by declarations from the following two individuals: (1) Sarah Kotler, Director of the Division of Freedom of Information in FDA's Office of the Secretariat ("Kotler Decl."), attached hereto as **Exhibit 1**, and (2) Candace Davis, Division Director for the Division of Information in FDA's Center for Devices and Radiological Health ("Davis Decl."), attached hereto as **Exhibit 2**.

of Food and Drugs (the "Commissioner") [2] determined that there was a "public health emergency" involving COVID-19. Emergency Use Authorization Declaration, 95 Fed. Reg. 18250, 18250 (Apr. 1, 2020). On the basis of this determination, on March 27, 2020, the Commissioner, "declared that circumstances exist justifying the authorization of emergency use of drugs and biological products during the COVID-19 pandemic, pursuant to section 564 of the [ ] Act." *Id.* at 18250–51.

On August 5, 2020, FDA issued an umbrella EUA for certain "disposable, single-use surgical masks . . . for use in healthcare settings by healthcare personnel (HCP) as personal protective equipment (PPE) to provide a physical barrier to fluids and particulate materials to prevent HCP exposure to respiratory droplets and large particulates during surgical mask shortages resulting from the COVID-19 pandemic[.]" Letter from Jeffrey E. Shuren, Director, CDRH, FDA, to Manufacturers of Surgical Masks (Mar. 6, 2023), https://www.fda.gov/media/140894/download. FDA publishes a list of surgical masks that are authorized under the umbrella EUA, as well as the date of their authorization, on its website. *See* Personal Protective Equipment EUAs, FDA, https://www.fda.gov/medical-devices/covid-19-emergency-use-authorizations-medical-devices/personal-protective-equipment-euas#surgicalmasks (Mar. 10, 2023).

**B.      FDA's Policy Regarding Disclosure of Files for Unauthorized EUA Requests**

FDA's implementing regulations prohibit the disclosure of various pending premarket submissions for medical devices. *See, e.g.*, 21 C.F.R § 807.95 (510(k) submissions); 21 C.F.R.

---

[2] The Secretary has redelegated to the Commissioner, "with authority to redelegate (except when specifically prohibited), all . . . [f]unctions vested in the Secretary under the Federal Food, Drug, and Cosmetic Act . . . (21 U.S.C. 301 et seq.), as amended." FDA Staff Manual Guide SMG 1410.10, Delegations of Authority to the Commissioner Food and Drugs (Feb. 22, 2023), https://www.fda.gov/media/81983/download.

§ 812.38 (investigational device exemption (IDE) submissions); 21 C.F.R. § 814.9 (premarket approval (PMA) applications. Although FDA does not have a regulation directly on point with respect to EUA submissions, consistent with these regulations and similar regulations governing other product applications and submissions made to FDA, it is FDA's longstanding practice not to disclose the existence of an EUA request unless the request has already been publicly disclosed by the applicant, and FDA does not to disclose the contents of the EUA request file until after the EUA request is authorized by FDA. Davis Decl. ¶ 16; *see e.g.*, 21 C.F.R. § 312.130 (prohibiting disclosure of existence and contents of investigational new drug applications); *id.* § 314.430 (prohibiting disclosure of existence and contents of unapproved drug applications and unapproved abbreviated new drug applications); *id.* § 601.50 (prohibiting disclosure of existence and contents of investigational new drug notice for a biological product); *id.* § 601.51 (prohibiting disclosure of existence and contents of unapproved biologics licenses); *id.* § 1114.47 (prohibiting disclosure of existence and contents of premarket tobacco product applications prior to issuance of a marketing granted order). If, however, the existence of the EUA request has been publicly disclosed by the applicant, FDA may disclose whether the EUA request has been submitted. Davis Decl. ¶ 17.

Pursuant to 21 C.F.R. § 20.61, FDA considers every record in an EUA request to be the confidential commercial information of the applicant, which is exempt from disclosure under FOIA Exemption 4 unless the applicant waives the confidentiality of its information. Davis Decl. ¶ 18. Pursuant to 21 C.F.R. § 20.61, FDA also considers FDA's communications with the applicant about the EUA request to be the applicant's confidential commercial information (because they reveal the contents of the EUA request, which is exempt from disclosure under FOIA Exemption 4), unless the applicant waives the confidentiality of its information. *Id.* ¶ 19.

### C.    Plaintiffs' FOIA Request/Undisputed Facts

On February 17, 2021, Plaintiffs submitted a FOIA request to FDA, seeking

> [all] Emergency Use Authorizations, including any form filed or any information, correspondence and/or documentation submitted with each Emergency Use Authorization for PPE for the following entities: 3B Tech, Inc.[;] Pro-Com Products, Inc.[;] Salusen, Inc.[;] Shenzhen Centurion Technology Co. LTD.[; and] J&F Technology Services LLC on behalf of Shenzhen Centurion Technology Co. LTD.

Kotler Decl. ¶ 12.

On February 19, 2021, FDA advised Plaintiffs that due to the increasing number of FOIA requests submitted to the agency, FOIA "requests for medical device approval records . . . may take up to 18 to 24 months to process." Compl., ECF No. 1, ¶ 10; Answer, ECF No. 19 ¶ 10. On February 23, 2021, FDA advised Plaintiffs that records for authorized EUA requests for PPE are published on FDA's website. Kotler Decl. ¶ 14. On March 3, 2021, Plaintiffs informed FDA that their FOIA request sought the files underlying the EUA requests submitted by the named entities. *Id.* ¶ 15. That same day, Plaintiffs' FOIA request was assigned to FDA's Center for Devices and Radiological Health (CDRH) because the request seeks records related to the activity of that Center. Kotler Decl. ¶ 16; Davis Decl. ¶ 13.

FDA determined that it has records for an EUA request for PPE submitted by Shenzhen Centurion, but FDA has no records for any EUA requests submitted by 3B Tech, Inc. ("3B Tech"); Pro-Com Products, Inc. ("Pro-Com"); Salusen, Inc. ("Salusen"); or J&F Technology Services LLC ("J&F"). Davis Decl. ¶¶ 27, 29. FDA also determined that the EUA request submitted by Shenzhen Centurion was never authorized by FDA. *Id.* ¶ 31. FDA was unable to locate any public records in which any of the five entities listed in Plaintiffs' FOIA request publicly acknowledged submitting an EUA request to FDA. *Id.* ¶ 32.

Consistent with FDA's longstanding practice with respect to other types of premarket submissions, FDA determined that it was not proper to publicly disclose the existence or lack thereof regarding any of the EUA requests listed in Plaintiffs' FOIA request. *Id.* ¶ 33. On March 22, 2023, FDA denied Plaintiffs' FOIA request and stated that "FDA can neither confirm nor deny the existence of records that would be responsive to your request, as doing so could reveal confidential commercial information." Kotler Decl. ¶ 17.

Thereafter, Plaintiffs' counsel provided FDA with documentation in support of Plaintiffs' assertion that the entities listed in Plaintiffs' FOIA request had represented to third parties that they had submitted EUA requests to FDA. Davis Decl. ¶ 34. FDA considered the documentation and determined that all of the entities listed in the FOIA request had represented to third parties that they had submitted EUA requests to FDA. *Id.* ¶ 35.

On April 17, 2023, FDA issued a revised response to Plaintiffs. Kotler Decl. ¶ 20. In that letter, FDA notified Plaintiffs that it has "no records responsive to your request for records regarding 3B Tech, Inc.; Pro-Com Products, Inc.; Salusen, Inc.; or J&F Technology Services LLC." *Id.* It also notified Plaintiffs that FDA does have records responsive to Plaintiffs' request for records regarding Shenzhen Centurion, but that FDA could not produce those records because they are exempt from disclosure under FOIA Exemption 4. *Id.*

The only issue on summary judgment is whether FDA properly withheld the Shenzhen Centurion EUA request records under FOIA Exemption 4.

## II.    LEGAL STANDARDS

### A.    Summary Judgment in FOIA Actions

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "FOIA cases are

generally resolved on summary judgment once the documents have been properly identified[,]"

*Wickwire Gavin, P.C. v. U.S. Postal Serv.*, 356 F.3d 588, 591 (4th Cir. 2004), and the summary

judgment standard is the same in FOIA cases, *see Freeman v. U.S. Dep't of Justice*, 808 F.2d

834, 1986 WL 18310, at *2 (4th Cir. 1986) (unpublished table decision).

   "[B]ecause public disclosure is not always in the public interest, the [FOIA] statute

contains nine exemptions that reflect a wide array of concerns and are designed to safeguard

various public interests against the harms that would arise from overbroad disclosure[.]" *Am.

Mgmt. Servs., LLC v. Dep't of the Army*, 703 F.3d 724, 728–29 (4th Cir. 2013) (citations and

internal quotation marks omitted). "The burden of demonstrating that a requested document falls

under an exemption rests on the government." *Hunton & Williams v. U.S. Dep't of Justice*, 590

F.3d 272, 276 (4th Cir. 2010). "Summary judgment is warranted on the basis of agency affidavits

when the affidavits describe the justifications for nondisclosure with reasonably specific detail,

demonstrate that the information withheld logically falls within the claimed exemption, and are

not controverted by either contrary evidence in the record nor by evidence of agency bad faith."

*Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)."Agency affidavits are accorded a

presumption of good faith, which cannot be rebutted by purely speculative claims about the

existence and discoverability of other documents." *SafeCard Servs., Inc. v. Secs. & Exchange

Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted). "If an

exemption applies only to a portion of a document, FOIA requires that '[a]ny reasonably

segregable portion of a record shall be provided . . . after deletion of the portions which are

exempt.'" *Solers, Inc. v. Internal Revenue Serv.*, 827 F.3d 323, 328 (4th Cir. 2016) (alterations in

original) (quoting 5 U.S.C. § 552(b)). "Ultimately, an agency's justification for invoking a FOIA

6

exemption is sufficient if it appears logical or plausible." *Id.* (internal quotation marks omitted). *Larson*, 565 F.3d at 862.

"In addition, under the FOIA Improvement Act of 2016, an agency may only withhold information under a FOIA exemption if it 'reasonably foresees that disclosure would harm an interest protected by an exemption[,]' or if 'disclosure is prohibited by law[.]'" *Campaign Legal Ctr. v. U.S. Dep't of Justice*, 34 F.4th 14, 19 (D.C. Cir. 2022) (alterations in original) (quoting 5 U.S.C. § 552(a)(8)(A)(i)).

### B.    Discovery in FOIA Actions

"Discovery is the exception and not the rule in FOIA cases. Discovery in FOIA [cases] is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains." *Goldner v. Social Sec. Admin.*, 293 F. Supp. 3d 540, 544 (D. Md. 2017) (alteration in original) (citation and internal quotation marks omitted). "Discovery is only appropriate when an agency has not taken adequate steps to uncover responsive documents." *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 36 (D.D.C. 2002). "Even in such cases [where discovery is appropriate], [ ] discovery is [n]ormally . . . deemed appropriate only after the agency has moved for summary judgment and submitted affidavits or declarations." *Goldner*, 293 F. Supp. 3d at 544 (alterations in original) (citation and internal quotation marks omitted). "Whether a given document properly falls within the scope of one of the statutory exemptions is a question of law[,]" not of fact. *Wickwire Gavin, P.C. v. Def. Intelligence Agency*, 330 F. Supp. 3d 592, 596 (E.D. Va. 2004) (citing *Ethyl Corp. v. U.S. Envtl. Prot. Agency*, 25 F.3d 1241, 1246 (4th Cir. 1994)).[3]

---

[3] This Court previously denied Plaintiffs' request for discovery. *See* Pls.' Opp. to Defs.' Mot. to Establish Summ. J. Briefing Schedule, ECF No. 22, at 2. To the extent that Plaintiffs renew their

III.    ARGUMENT

A.    **The Information Contained in Shenzhen Centurion's EUA Request File is Exempt from Disclosure Under FOIA Exemption 4**

FOIA Exemption 4 exempts from disclosure "trade secrets and commercial or financial information obtained from a person [ ] [that are] privileged and confidential." 5 U.S.C. § 552(b)(4). FDA's implementing regulations define "trade secret" as "any commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort. There must be a direct relationship between the trade secret and the productive process." 21 C.F.R. § 20.61(a). FDA's implementing regulations define "commercial or financial information that is privileged or confidential" as "valuable data or information which is used in one's business and is one a type customarily held in strict confidence of regarded as privileged and not disclosed to any member of the public by the person to whom it belongs. *Id.* § 20.61(b).

In *Food Marketing Institute v. Argus Leader Media*, the Supreme Court clarified the meaning of "confidential" for purposes of Exemption 4, holding that "[a]t least where commercial or financial information is both [(1)] customarily and actually treated as private by its owner and [(2)] provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." 139 S. Ct. 2356, 2366 (2019). The Court explained that at least the first condition must be met in order for the information to be considered "confidential," but it declined to decide whether the second condition is also

---

request for discovery, that request is inappropriate because the only issue on summary judgment is whether FDA properly withheld the contents of the Shenzhen Centurion EUA request file, which is a purely legal question.

necessary in order for information to be considered "confidential" for purposes of applying Exemption 4. *See id.* at 2363.

Here, the withheld information is of the type that would be kept private or closely held by Shenzhen Centurion.[4] EUA requests may include: (1) a description of the product; (2) a description of the product's approval status; (3) the need for the product; (4) availability and effectiveness information for the product; (5) a discussion of risks and benefits of the product; (5) information on chemistry, manufacturing, and controls; a list site where the product is or would be manufactured, and the current good manufacturing practice status of the manufacturing site(s); (6) information about the quantity of the finished product on hand and the surge capabilities of the manufacturing site(s); (7) information comparable to an FDA-approved package insert or instructions for use; drafts of the "Fact Sheets" to be furnished to health care professionals or authorized dispenser and recipients of the product; and a discussion of the feasibility of providing such information in an emergency; (8) if seeking an extension of a product's labeled expiration date, any information in support of such an extension; and (9) any right of reference, as applicable.[5] *See* Davis Decl. ¶ 11; FDA, Personal Protective Equipment EUAs, https://www.fda.gov/medical-devices/covid-19-emergency-use-authorizations-medical-devices/personal-protective-equipment-euas (Mar. 10, 2023). Courts have held that FDA is justified in withholding these types of information under FOIA Exemption 4. *See, e.g.*, *Henson v. Dep't of Health & Human Servs.*, No. 14-cv-908-DRH-DGW, 2017 WL 1090815, at *5 (S.D. Ill.

---

[4] Agency counsel attempted—but was unable—to contact Shenzhen Centurion to ascertain whether it would waive the confidentiality of the information in its EUA request.

[5] FDA conducted a reasonable search in response to Plaintiffs' FOIA request and determined that there are no responsive documents that are not considered part of the EUA request file. *See* Davis Decl. ¶¶ 22-39.

Mar. 23, 2017) (holding that FDA appropriately asserted Exemption 4 over "raw material used in the manufacturing process[] [and] raw material used in the testing process" in a medical device premarket application submitted to FDA); *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 903 F. Supp. 2d 59, 65 (D.D.C. 2012) (not challenging FDA's assertion of Exemption 4 over "names and product identifying information of devices and the names and contact information of device manufacturers where PMAs or 510(k) notifications were required to be submitted to FDA by device manufacturers before the manufacturers marketed the devices"); *ViroPharma Inc. v. Dep't of Health & Human Servs.*, 839 F. Supp. 2d 184, 191 (D.D.C. 2012) (holding that FDA appropriately asserted Exemption 4 over "safety and effectiveness information" and "drug product manufacturing information or drug chemical composition and specifications" in a pending drug application submitted to FDA); *Heeney v. Food & Drug Admin.*, No. CV 97-5461 MMM CTX, 1999 WL 35136489, at \*7 (C.D. Cal. Mar. 16, 1999) (holding that FDA appropriately asserted Exemption 4 over "[d]esign and testing data, including specification of the materials used in constructing the product" in a medical device premarket application).

It is particularly important for FDA to maintain the confidentiality of all information in unauthorized product application files, including the types of information an applicant chooses to submit as part of its application and FDA's communications with the applicant about the application, because premature disclosure of documents underlying an unauthorized submission would reveal the submission's context and could allow competitors to use the information in the unauthorized application as a roadmap to obtain authorization for their own products. *See* Davis Decl. ¶ 44; *see also Webb v. Dep't of Health & Human Servs.*, 696 F.2d 101, 103 (D.C. Cir. 1982) ("If a manufacturer's competitor could obtain all the data in the manufacturer's [new drug

application (NDA)], it could utilize them in its own NDA without incurring the time labor, risk, and expense involved in developing them independently."). A showing of the privately-held nature of the documents alone is sufficient to establish that the withheld information is confidential commercial information and/or trade secret within the meaning of Exemption 4. Although *Argus Leader* left open the question of whether "privately held information [can] *lose* its confidential character for purposes of Exemption 4 if it's communicated to the government without assurances that the government will keep it private[,]" 139 S. Ct. at 2363, here, "context shows that [Shenzhen Centurion] supplied the information to the FDA under an implied assurance of confidentiality[,]" *Seife v. Food & Drug Admin.*, 492 F. Supp. 3d 269, 276 (S.D.N.Y. 2020), *aff'd*, 43 F.4th 231 (2d Cir. 2022). FDA provides an "implied assurance of confidentiality" to EUA applicants because, consistent with its longstanding practice with respect to other types of premarket submissions, FDA will not publicly disclose the existence of an EUA request before it is authorized, unless the existence of an EUA request has been publicly disclosed by the applicant, *see* Davis Decl. ¶ 17, and FDA also generally will not disclose the data in its file for an unauthorized EUA request, *see id.* ¶ 18; *see also U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 179 (1993) (explaining that an implied assurance of confidentiality fairly can be inferred" based on "generic circumstances"). As noted previously, FDA's implementing regulations expressly prohibit disclosure of information from similar pending premarket submissions for medical devices, *see, e.g.*, 21 C.F.R § 807.95 (confidentiality of 510(k) submissions); 21 C.F.R. § 812.38 (confidentiality of investigational device exemption (IDE) submissions); 21 C.F.R. § 814.9 (confidentiality of premarket approval (PMA submissions), which further implies an assurance of confidentiality, *see Seife*, 492 F. Supp. 3d at

276 (noting that "the FDA regulations themselves support th[e] inference" "that Sarepta supplied the information to the FDA under an implied assurance of confidentiality").

As discussed in the Davis Declaration, FDA determined that Shenzhen Centurion's EUA request was never authorized by FDA. Davis Decl. ¶ 31. FDA was also unable, through internet searches, to locate any evidence that Shenzhen Centurion had made any public statements about submitting an EUA request to FDA for PPE. *Id.* Consistent with FDA's longstanding policy not to disclose the data in the file for an unauthorized EUA request, as discussed *supra*, FDA denied Plaintiffs' request. *Id.* ¶ 33. However, Plaintiffs later provided documentation to FDA supporting Plaintiffs' assertion that Shenzhen Centurion had represented to third parties, without any apparent limits on disclosure, that it had submitted an EUA request to FDA. *Id.* ¶ 34.

Therefore, the *existence* of Shenzhen's Centurion's EUA request is not confidential commercial information because Shenzhen Centurion has already disclosed the existence of the EUA request to third parties. *Id.* ¶ 35. However, because Shenzhen Centurion's EUA request has not been authorized by FDA, the *contents* of the EUA request file are Shenzhen Centurion's confidential commercial information and are therefore exempt from disclosure pursuant to Exemption 4. *Id.* ¶ 37.

Accordingly, FDA properly determined that the information in Shenzhen Centurion's EUA request file is exempt from disclosure under Exemption 4.

## B.    FDA Properly Determined that No Portion of the EUA Request File is Reasonably Segregable

Under the FOIA, generally an agency withholding information under a FOIA exemption must produce any "[a]ny reasonable segregable portion of a record" indicating the amount of information withheld and the exemption under which the withholding was made, 5 U.S.C. § 552(b), as well as a *Vaughn* index describing the withheld information, *see Rein v. U.S. Patent*

12

*& Trademark Office*, 553 F.3d 353, 357 n.6 (4th Cir. 2009). However, an agency need not

provide this information if doing so "would harm an interest protected by the exemption" under

which the information is withheld. 5 U.S.C. § 552(b). As discussed in Section III.A., *supra*, the

interested protected by Exemption 4 is the confidentiality of the withheld information.

Courts have long recognized that information in the file for an unapproved application

submitted to FDA is trade secret/confidential commercial information that may be exempt from

disclosure under FOIA Exemption 4. *See, e.g.*, *Webb*, 696 F.2d 101 at 103 ("[A] drug

manufacturer which has submitted an NDA has a competitive interest in seeing that the

information in its NDA is not prematurely released to the public."); *Citizens Comm'n on Human*

*Rights v. Food & Drug Admin.*, No. 92CV5313, 1993 WL 1610471, at *10 (C.D. Cal. May 10,

1993) (holding that "[i]nformation from unapproved [drugs] is considered particularly sensitive,

as reflected in FDA's regulations, which provide that no unapproved information is available for

public disclosure" and was appropriately withheld by FDA under Exemption 4).

The Supreme Court has noted that "categorical decisions may be appropriate and

individual circumstances disregarded when a case fits into a genus in which the balance

characteristically tips in one direction." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of*

*Press*, 489 U.S. 749, 776 (1989). Moreover, "establishing a discrete category of exempt

information[] implements the congressional intent to provide 'workable' rules . . . . Only by

construing the exemption to provide a categorical rule can the [Freedom of Information] Act's

purpose of expediting disclosure by means of workable rules be furthered." *Fed. Trade Comm'n*

*v. Grolier Inc.*, 462 U.S. 19, 27–28 (1983). Those "workable rules" permit FDA to protect as

confidential commercial information the entire contents of EUA files absent a requestor

demonstrating that the specific information it seeks was made public in a lawful manner.

Here, consistent with FDA's implementing regulations that prohibit disclosure of information from similar pending premarket submissions for medical devices, FDA has withheld all responsive records regarding an unauthorized EUA request pursuant to Exemption 4. *See* Section III.A., *supra*; Davis Decl. ¶¶ 37, 39. A *Vaughn* index is not required here because as the Davis Declaration makes clear, FDA treats *all* information within an EUA request file as confidential commercial information, *see* Davis Decl. ¶¶ 18–19, and "[w]hen[] [ ] a claimed FOIA exemption consists of a generic exclusion, depending on the category of records rather than the subject matter which each individual record contains, resort to a *Vaughn* index is futile[,]" *Church of Scientology v. Internal Revenue Serv.*, 792 F.2d 146, 152 (D.C. Cir. 1986); *see also Public Citizen v. Mineta*, 427 F. Supp. 2d 7, 11 (D.D.C. 2006) (upholding agency rule establishing categorical determinations of confidentiality for classes of data under Exemption 4 as necessary for effective administration). Moreover, the contents of an EUA request file, i.e., what information the applicant chooses to submit to FDA and FDA's communications regarding the submission, is itself confidential commercial information, *see* Davis Decl. ¶ 37, and therefore, creation of a *Vaughn* index would lead to disclosure of the very confidential commercial information that FDA is prohibited from disclosing, *see* Section III.C, *infra*. "The agency is not required[] [ ] to specify its objections [to disclosure] in such detail as to compromise the secrecy of the information. If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need look no further." *Bowen v. U.S. Food & Drug Admin.*, 925 F.2d 1225, 1227 (9th Cir. 1991) (second alterations in original) (citation and internal quotation marks omitted)). Accordingly, because FDA has proffered a declaration establishing the appropriateness of the agency's application of Exemption 4 to the withheld information, *see generally* Davis Decl., a

*Vaughn* index is not necessary, *see Church of Scientology*, 792 F.2d at 152 (collecting cases in which *Vaughn* index was not required).

For all of these reasons, FDA appropriately withheld the Shenzhen Centurion EUA request file in full based on its categorical determination that all unauthorized EUA request files are confidential, and Defendants are not required to provide a *Vaughn* index.

### C.    FDA's Withholding is Proper Under the FOIA Improvement Act

In addition to demonstrating that FDA has satisfied the standard for invoking Exemption 4, Defendants have also demonstrated that FDA has satisfied the standards under the FOIA Improvement Act of 2016.

The FOIA Improvement Act provides that "[a]gency shall—(i) withhold information under [FOIA] only if—(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b) [[the "foreseeable harm standard")]; or (II) disclosure is prohibited by law." 5 U.S.C. § 552(a)(8). The Trade Secrets Act criminalizes the disclosure by government employees of "trade secrets, processes, operations, styles of work, or apparatus, or the identity, confidential statistical data, amount or source of any income, profits, loss, or expenditures of any person, firm, partnership, corporation, or association[,]" 18 U.S.C. § 1905, and in the Fourth Circuit, "the scope of the Trade Secrets Act is co-extensive with that of exemption (4) of the FOIA[,]" *Acumenics Research & Tech. v. U.S. Dep't of Justice*, 843 F.2d 800, 806 (4th Cir. 1988). "Thus, for information falling within exemption (4), the Trade Secrets Act does bar an agency decision to release the information." *Id.* at 806–07; *see Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 72 n.1 (D.D.C. 2021) (explaining that "'[t]he foreseeable harm standard applies only to those FOIA exemptions under which discretionary disclosures can be made'" and information covered by Exemption 4 is not subject

to the foreseeable harm standard "if the disclosure is prohibited by the Trade Secrets Act" (alteration in original) (quoting S. Rep. No. 114-4, at 8 (2015))).

However, this Court need not decide whether the information at issue is covered by the Trade Secrets Act because FDA regulations provide that "[d]ata and information submitted or divulged to the [FDA] which fall within the definitions of a trade secret or confidential commercial information or financial information are not available for public disclosure." 21 C.F.R. § 20.61(c); *see* 21 C.F.R. § 20.81 (permitting discretionary disclosure except for, *inter alia*, information exempt from public disclosure pursuant to 21 C.F.R. § 20.61). Thus, under its own regulations, FDA does not have discretion to disclose such information, and the foreseeable harm standard does not apply.

And, even if the foreseeable harm standard were applicable, it is easily satisfied here. Prior to *Argus Leader*, whether information was "confidential" for purposes of Exemption 4 turned on the "competitive harm" caused by its public disclosure. *See Argus Leader*, 139 S. Ct. at 2360. As discussed in Section III.A., *supra*, *Argus Leader* expressly rejected the "competitive harm" requirement and adopted a new test for measuring confidentiality, which turns on whether the withheld information is treated as "private" by its owner. *Id.* at 2366. Post-*Argus Leader*, "the plain and ordinary meaning of Exemption 4 indicates that the relevant protected interest is that of the information's *confidentiality*—that is, its private nature. Disclosure would necessarily destroy the private nature of the information, no matter the circumstance." *Am. Small Bus. League v. U.S. Dep't of Def.*, 411 F. Supp. 3d 824, 836 (C.D. Cal. 2019). Thus, to the extent the foreseeable harm standard applies in this context, it merely requires an assessment that disclosure of the withheld information would harm the interest protected by Exemption 4, which the Supreme Court made clear is simply the confidentiality of the information at issue.

Here, FDA reasonably concluded that disclosure of the withheld information would cause foreseeable harm to the privacy of that information. *See* Davis Decl. ¶ 43. Moreover, disclosure of the withheld information could reveal the EUA request's content and allow competitors to use the information in the file for the unauthorized EUA request as a roadmap to obtain authorization for their own products. *See id.* ¶ 44.

Accordingly, FDA has satisfied the additional requirements imposed by the FOIA Improvement Act of 2016.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment should be granted.

Date:   May 24, 2023                          Respectfully submitted,

                                              EREK L. BARRON
                                              United States Attorney

                              By:    _____/s/_____
                                              ALICIA L. SHELTON
                                              Assistant United States Attorney
                                              U.S. Attorney's Office, District of Maryland
                                              36 S. Charles Street, Fourth Floor
                                              Baltimore, MD 21201
                                              (410) 209-4836
                                              Alicia.Shelton2@usdoj.gov

                                              *Counsel for Defendants*

Of Counsel:

SAMUEL R. BAGENSTOS
General Counsel
U.S. Department of Health and Human Services

MARK RAZA
Chief Counsel

WENDY S. VICENTE
Deputy Chief Counsel, Litigation

ELIZABETH TETER-GOSSMANN
Associate Chief Counsel
Office of the General Counsel
U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993